NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000405
27-SEP-2019
09:07 AM

NO. CAAP-16-0000405

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

RYAN K. STONE, Petitioner-Appellant,
v.
ADMINISTRATIVE DIRECTOR OF THE COURTS,
Respondent-Appellee,

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(CASE NO. 1DAA-16-00001)

MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Fujise and Hiraoka, JJ.)

In this secondary appeal, Petitioner-Appellant Ryan K. Stone (**Stone**) appeals from the District Court of the First Circuit (**District Court**) "Decision and Order Affirming Administrative Revocation" (**District Court Order**) filed on April 19, 2016.[1]

On appeal, Stone argues that the District Court erred when it affirmed the Administrative Driver's License Revocation Office's (**ADLRO**) revocation of his license because: (1) "[t]he ADLRO process is materially and inextricably related to [sic] criminal [Operating a Vehicle Under the Influence of an

---

[1] The Honorable Lono J. Lee presided.

Intoxicant (**OVUII**)] prosecution"; and (2) "[a]n unsigned by handwritten signature police report is an unsworn police report."

For the following reasons discussed below, we affirm.

## I.  Background

Stone was arrested for OVUII, pursuant to Hawaii Revised Statutes (**HRS**) § 291E-61(a) (2007).  While Stone was in custody, he was read HPD-396K form, titled "Use of Intoxicants While Operating a Vehicle Implied Consent for Testing," which stated, in relevant part:

> Pursuant to chapter 291E Hawaii Revised Statutes (HRS), Use of Intoxicants While Operating a Vehicle, you are being informed of the following:
>
> 1.    Any Person who operates a vehicle upon a public way, street, road, or highway or on or in the waters of the State shall be deemed to have given consent to a test or tests for the purpose of determining alcohol concentration or drug content of the persons [sic] breath, blood, or urine as applicable.
>
> . . . .
>
> 3.    You may refuse to submit to a breath or blood test or both for the purpose of determining alcohol concentration and or blood or urine test, or both for the purpose of determining drug content, none shall be given, except as provided in section 291E-21. However, if you refuse to submit to a breath, blood, or urine test, you shall be subject to up to thirty days imprisonment and or fine up to $1,000 or the sanctions of 291E-65, if applicable.  In addition, you shall also be subject to the procedures and sanctions under chapter 291E part III.

Stone refused the breath and blood tests.

While in custody, Stone was also read [Honolulu Police Department (**HPD**)] 396B1-B4 form, titled "Sanctions for Use of Intoxicants While Operating a Vehicle & Implied Consent for Testing," which stated, in relevant part:

> Pursuant to chapter 291E, Hawaii Revised Statutes (HRS), Use of Intoxicants While Operating a Vehicle, you are being informed of the following:
>
> 1.    If you choose to take an alcohol concentration test and the test result is below the legal limit of 0.08, the administrative revocation proceedings will be terminated with prejudice.
>
> . . . .

7. The administrative revocation of driver's license consequences for taking or refusing to take a test are as follows:

   a. If you refuse to take any tests and your record shows no prior alcohol or drug enforcement contact during the five years preceding the date the notice of administrative revocation was issued, your license and privilege to operate a vehicle will be revoked for a period of two years.

   However, if you choose to take a test and fail it, your license and privilege to operate a vehicle will be revoked for one year.

   . . . .

12. If you refuse to be tested, criminal charges may be filed against you under Part IV, Prohibited Conduct, section 291E or if applicable, you may be subject to the sanctions of section 291E-65.

Stone again refused the breath and blood test.

Stone was read and provided with a "Notice of Administrative Revocation" form, which Stone refused to sign. This form stated, in relevant part, that Stone was being provided with a temporary driver's permit while his license was forwarded to the ADLRO for a determination of whether his license would be revoked.

Stone's arrest was documented in police incident reports.

The ADLRO revoked Stone's driver's license. Stone requested an administrative hearing to review the revocation. The ADLRO sustained the revocation, and on March 16, 2016, released its "Findings of Fact, Conclusions of Law, and Decision" (**ADLRO Decision**) affirming the revocation. Stone petitioned for review of the ADLRO Decision in the District Court. Subsequently, the District Court Order was entered affirming the ADLRO. Stone appeals from the District Court Order.

## II. Discussion

### A. Won Does Not Apply

Stone argues that the language in the HPD implied consent forms (**implied consent forms**) were "inherently coercive,"

and not "substantively legal," and thus the ADLRO's finding of driving while impaired was "negate[d]."

Stone refers to the Hawai'i Supreme Court Decisions State v. Yong Shik Won, 137 Hawai'i 330, 372 P.3d 1065 (2015) and State v. Wilson, 92 Hawai'i 45, 987 P.2d 268 (1999) to support his argument.

The Court in Won explained that under HRS § 291E-11 (Supp. 2006), "[e]very person who drives on the roads of Hawai'i is deemed to have given consent to a BAC[2] test when suspected of OVUII." 137 Hawai'i at 344, 372 P.3d at 1079. However, before the test is administered, the driver must be informed that they may refuse testing and thereby withdraw consent. Id. The Supreme Court ruled that because there is a constitutional right to be free from warrantless search and seizure, if the driver does consent to testing, that consent must be "voluntary" and "uncoerced" and consent to a search may be withdrawn. Id. at 338-41, 344, 372 P.3d at 1073-76, 1079.

Won was arrested for OVUII, and while under arrest, he was read an Implied Consent Form. Id. at 334, 372 P.3d at 1069. The form stated that as a driver he had given consent to be tested for the concentration of alcohol in his breath, blood, or urine, and that he could refuse these tests, but that there were penalties for such a refusal: the civil revocation of his license and a criminal sanction. Id. at 334-35, 372 P.3d at 1069-70. The criminal sanction was "up to thirty days in jail, a fine not exceeding $1,000, and imposition of community service and payment of other assessments and fees." Id. at 334, 372 P.3d at 1069 (footnotes omitted). Won initialed the form where it said that he agreed to take a breath test, but refused the blood test, and signed the bottom of the form. Id. at 335, 372 P.3d at 1070. A breath test was performed, Won was found to be over the limit, and he was ultimately found guilty of OVUII. Id. at 335-36, 372 P.3d at 1070-71.

---

[2] A BAC test is a blood alcohol concentration or content test.

Won appealed and the Hawai'i Supreme Court ultimately agreed with him that he did not submit to the breath test freely and voluntarily because his "statutory and constitutional right to refuse consent was criminalized." Id. at 336, 372 P.3d at 1071. The Supreme Court held that Won did not voluntarily consent to the breath test because he was effectively coerced into giving his consent under the threat of criminal sanction. Id. at 348-49, 372 P.3d at 1083-84.

In the instant case, Stone attempts to extend the ruling in Won to the civil administrative revocation procedure for OVUIIs. Stone argues that because the language in the implied consent forms that were provided to him is the same as the language used in Won, the forms provided to Stone were "per se illegal." He reasons that because the forms were illegal, his civil OVUII driver's license revocation was improper.

Stone's argument is without merit. In Won, the Supreme Court explicitly and repeatedly stated that its ruling did not apply to OVUII civil revocation proceedings. At the very outset, the Court prefaces its opinion by very pointedly stating:

> Hawai'i law provides two categories of penalties for drivers that refuse to submit to a BAC test. The first is an extended revocation period of the person's driver's license in an administrative process applicable to all persons arrested for OVUII. HRS § 291E-41(d) (Supp.2010); see generally HRS Chapter 291E, Part III. The administrative license revocation process is "civil in nature." State v. Severino, 56 Haw. 378, 380, 537 P.2d 1187, 1189 (1975). This court has upheld civil license revocation on several occasions. See, e.g., Dunaway v. Admin. Dir. of Courts, 108 Hawai'i 78, 87, 117 P.3d 109, 118 (2005); Kernan v. Tanaka, 75 Haw. 1, 22, 856 P.2d 1207, 1218 (1993); Severino, 56 Haw. at 380-81, 537 P.2d at 1189. The civil revocation of driver's licenses under HRS Chapter 291E, Part III, is not an issue in this case.

Id. at 334, 372 P.3d at 1069 (footnotes omitted). Furthermore, to ensure that it is clear, Won states in a footnote: "[i]t bears repeating here that this opinion does not concern the civil administrative penalties attendant to a driver's refusal of BAC testing. Those types of sanctions are not affected in any way by our decision." Id. at 349 n.34, 372 P.3d at 1084 n.34 (emphasis added) (citation omitted).

In addition to the Supreme Court's explicit instructions, the factual differences between <u>Won</u> and the instant case demonstrate that <u>Won</u> cannot be extended to this case.  In <u>Won</u>, the defendant was informed that if he did not submit to a BAC test he would be criminally sanctioned, and under this threat of criminal penalty, Won consented to a breath test.  <u>Id.</u> at 333, 372 P.3d at 1068.  Thus, Won argued, and the Supreme Court agreed, that Won's consent was coerced because it was obtained by threat of criminal prosecution.  <u>Id.</u> at 347, 372 P.3d at 1082.  In the instant case, to the contrary, Stone was informed that there were both civil and criminal sanctions if he did not submit to a BAC, but Stone did <u>not</u> consent to the BAC.  Thus, the main issue present in <u>Won</u> - coerced consent - is not present in this case.

Stone also refers to <u>Wilson</u> to support his argument that his driver's license revocation should be overturned.  Wilson was arrested for Driving Under the Influence (**DUI**).  92 Hawai‘i at 46, 987 P.2d at 269.  Wilson was informed by the arresting officer that someone who consented to a blood alcohol test and failed would only have their driver's license revoked for three months, when in fact they could have their license revoked from three months up to a year.  <u>Id.</u> at 51, 987 P.2d at 274.  Wilson consented to a blood alcohol test, failed, and was charged by criminal complaint with DUI.  <u>Id.</u> at 46, 52, 987 P.2d at 269, 275.  Wilson moved to suppress the results of the blood test, the motion was granted, and the State appealed.  <u>Id.</u> at 46-48, 987 P.2d at 269-71.

The Supreme Court held that because the information provided to Wilson was "inaccurate and misleading," Wilson did not make a "knowing and intelligent decision whether or not to submit to the evidentiary blood alcohol test[.]" <u>Id.</u> at 46, 987 P.2d at 269.  Consequently, the Court held that the "violation of HRS chapter 286's consent requirement precludes admissibility of

6

Wilson's blood test results in his related criminal DUI proceeding." Id. at 53-54, 987 P.2d at 276-77.

Stone cites to Wilson to support his argument that civil and criminal OVUII sanctions are so closely tied to one another that Won should be extended to overturn his civil revocation. Indeed, the Supreme Court in Wilson does state that the civil revocation process and criminal prosecution for DUI are "inextricably related[.]" Id. at 52, 987 P.2d at 275. However, this was used to explain how evidence, obtained after a driver is provided with inaccurate information on civil sanctions which then leads to a criminal DUI conviction, can be suppressed. Id. This was not meant to extend cases like Won. Won was decided after Wilson and, as noted, Won explicitly states that its holding does not apply to civil revocation proceedings. Thus, Stone's first point of error is without merit.

## B. Electronic Signatures on Police Reports

Stone argues in his second point of error that because there were only electronic signatures on the police incident reports, instead of handwritten signatures, the reports were not "sworn" to and thus are invalid.

Statutes pertaining to the driver's license revocation process require sworn statements. See HRS §§ 291E-36(b) (2007); -37(c)(3) (2007); -38(g) (Supp. 2012); see also McGrail v. Admin. Dir. of Courts, State, 130 Hawai'i 74, 79-80, 305 P.3d 490, 495-96 (App. 2013); Kernan, 75 Haw. 1, 856 P.2d 1207. In Kernan, referring to HRS § 286-257[3] regarding sworn statements for the administrative revocation of driver's licenses, the Court explained:

> [t]he statute requires sworn statements, not statements given under oath or even notarized statements. The lack of statutory language creating these additional requirements raises a presumption that a statement sworn to by the officer is sufficient. The three statements submitted in each of the Appellants' cases bore the signature of that

---

[3] This statute has since been repealed. 2000 Haw. Sess. Laws Act 189, § 29 at 432. It required sworn statements from the arresting officer, the person responsible for maintaining the breath testing equipment, and the person who conducted the test. Although different statutes apply in this case, the issue of a "sworn statement" is similar.

> person and the statement, "I, (officer's name), swear that the following is true and correct." The statute requires nothing more.

Id. at 32, 856 P.2d at 1223 (emphasis added).

In the instant case, the police reports have the following statements: "[t]his report was prepared, signed, reviewed, submitted, and filed electronically via secure network in accord with Honolulu Police Department policy," and "I [name of officer], [p]olice [o]fficer, swear that the above facts are true and correct." (Emphasis added). The reports also have: the name of the police officer who wrote the report, the police officer's ID number, and the date and time the report was submitted.

The ADLRO Order, which was affirmed by the District Court, determined that the electronic signatures of the police officers have the same authority and validity as handwritten signatures and were thus valid under HRS Chapter 489E, particularly HRS § 489E-18.

Stone argues that the statutory provisions and legislative history indicate that Chapter 489E applies to "commercial transactions." He thus asserts that the use of electronic signatures in ADLRO proceedings are invalid and the police incident reports are not "sworn" to as required for such proceedings. We disagree.

> Questions of statutory interpretation are questions of law reviewed de novo.

>> In our review of questions of statutory interpretation, this court follows certain well-established principles, as follows:

>>> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. And fifth, in construing an ambiguous

> statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.

State v. Silver, 125 Hawai'i 1, 4, 249 P.3d 1141, 1144 (2011) (citations omitted).

In this case, the applicable provisions of HRS chapter 489E, entitled the "Uniform Electronic Transactions Act" (**UETA**), are plain and unambiguous. HRS § 489E-3 (2008) addresses the scope of Chapter 489E and provides that the UETA applies to "electronic records and electronic signatures relating to a transaction." HRS § 489E-3(a). In turn, "[t]ransaction" is defined as "an action or set of actions occurring between two or more persons relating to the conduct of business, commercial, <u>or governmental affairs</u>." HRS § 489E-2 (2008) (emphasis added). Moreover, HRS § 489E-18 (2008) specifically addresses the use of electronic signatures by governmental agencies:

> [§489E-18] **Acceptance and distribution of electronic records by governmental agencies.** (a) Except as otherwise provided in section 489E-12(f), each governmental agency of this State shall determine whether, and the extent to which, it will send and accept electronic records and electronic signatures to and from other persons and otherwise create, generate, communicate, store, process, use, and rely upon electronic records and electronic signatures.

The language in HRS § 489E-18 is clear that it is within the discretion of a governmental agency to determine whether and in what capacity the agency will use electronic signatures. Thus, Stone's argument that the UETA applies to commercial transactions and thus cannot apply to police reports is without merit.

The ADLRO Decision stated, and it is undisputed, that in accordance with HRS § 489E-18, the HPD promulgated its Policy Number 8.06, which provides:

> [a]n electronic signature that is automatically generated by a computer for a specific officer shall have the authority and validity of the officer's handwritten signature. The electronic signature shall consist of the officer's entire first and last names and six-digit identification number. The definition, application, and attribution of electronic signatures shall be in accordance with chapter 489E of the Hawaii Revised Statutes.

The ADLRO Decision further stated, and it is undisputed, that the ADLRO promulgated its own policy to accept electronic signatures from the HPD. This was done via a letter from the ADLRO Chief Adjudicator to the HPD Chief of Police in November 2006. Stone argues in cursory fashion that the letter by the ADLRO Chief Adjudicator was not authorized or approved by the Administrative Director of the Courts. However, Stone does not point to anything in the record to support his claim. Moreover, HRS § 291E-1 (2007) defines "Director" as "the administrative director of the courts or any other person within the judiciary appointed by the director to conduct administrative reviews or hearings or carry out other functions relating to administrative revocation under part III." (Emphasis added). Thus, Stone fails to demonstrate that the ADLRO Decision was incorrect.

In sum, therefore, the electronic signatures on the police reports in the instant case are valid, and Stone's second point of error is without merit.

### III. Conclusion

Based on the above, the "Decision and Order Affirming Administrative Revocation" entered by the District Court of the First Circuit on April 19, 2016, is affirmed.

DATED: Honolulu, Hawai'i, September 27, 2019.

On the briefs:

Christopher R. Evans,
for Petitioner-Appellant.

Ewan C. Rayner,
Deputy Solicitor General,
Kimberly Tsumoto Guidry,
Acting Solicitor General,
Appellate Division, Department
of the Attorney General,
for Respondent-Appellee.

Chief Judge

Associate Judge

Associate Judge

10